Gregory M. Simonsen (#4669)
Collin R. Simonsen (#12661)
FETZER SIMONSEN BOOTH & JENKINS, P.C.
50 West Broadway, Suite 1200
Salt Lake City, UT 84101
Office: (801) 328-0266
greg@mountainwestlaw.com
collin@mountainwestlaw.com

*Attorneys for Plaintiff*

---

# IN THE UNITED STATES DISTRICT COURT IN AND FOR
# DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LYNN A. DAVID, an individual, and THE LAD COMPANY CO dba THE HIKING INN,<br><br>Plaintiff,<br><br>vs.<br><br>MIDWAY CITY, a municipality and a political subdivision of the State of Utah; WASATCH COUNTY, a political subdivision of the State of Utah; ERIC K. MECHAM; and JOHN DOES 1-20,<br><br>Defendants. | **COMPLAINT**<br>**(Jury Trial Demanded)**<br><br><br>Case No. 2:20-cv-00066-DBP<br><br>Judge Dustin B. Pead |

Plaintiffs Lynn A. David and The Lad Company Co dba The Hiking Inn, by and through counsel of record Gregory M. Simonsen and Collin R. Simonsen of the law firm of Fetzer Simonsen Booth and Jenkins, hereby bring this action against Defendants Midway City, Wasatch County, Eric K. Mecham and John Does 1 through 20 as follows:

## PARTIES

1.      Plaintiff Lynn A. David (sometimes "David") resides at 364 Tanner Lane in Midway City, Utah.  Mr. David purchased this property in February 2011 and currently operates The Hiking Inn on the property.

2.      Plaintiff The Lad Company Co dba The Hiking Inn is a domestic corporation owned by Plaintiff Lynn David, with its principal place of business in Midway, Wasatch County, Utah.

3.      Midway City (sometimes the "City") is a municipality created and existing under Title 10 of the Utah Code.  Midway City, through its Planning Commission and City Council, has statutory authority to approve or disapprove any proposed development of real property within the City so long as the City follows the zoning and planning laws and ordinances enacted under state ordinances.  The City, acting through its Mayor, City Council, and City staff, has no authority to interfere with criminal prosecutions, usurp prosecutorial authority or to direct which individuals in the City are prosecuted, direct which individuals will be given leniency in prosecution, or broker plea deals in criminal prosecutions.  Neither does the City or County have authority to impose illegal taxes.  However, under policies, practices and customs of the City, through its governing bodies, the County and City has utilized secret communications, secret meetings, fraud, and public clamor to make its decisions on land use issues and criminal prosecution to obtain the land use results desired by persons in authority with the City.  As a result, the policies, procedures, and customs of the City have resulted in a decision making process that discriminates against persons that are new to the City or persons that desire to utilize private property in ways allowed under the City Code but not approved by individuals elected or

hired officials who wish to stop the lawful use of private property. All this has been done beginning in 2015 and continuing through the present in an unlawful effort to hinder, delay, and ultimately thwart Plaintiffs' efforts to legally use his property and grow his business. All this has resulted in repeated government action to take Plaintiffs' property and drive Plaintiffs from the County through regulation and action, ad hoc procedures, and illegal activities as further described herein.  All this has been a coordinated effort kept secret from the Plaintiffs until recently discovered.

4. This action is for taking of private and personal property actionable under Article 1 Section 22 of the Utah Constitution and the Fifth and Fourteenth Amendments of the United States Constitution and is not subject to the Utah Governmental Immunities Act. This action is also for conspiring to deprive the Plaintiffs of civil rights, including Plaintiffs' property and freedoms pursuant to Title 42 Section 1983 of the United States Code.

5. Defendant Wasatch County is a political subdivision of the State of Utah existing under Title 17 of the Utah Code.

6. Defendant Eric K. Mecham is an individual employed by Midway City who is part of a conspiracy hidden from Plaintiffs to take Plaintiffs' property and to deprive Plaintiffs of their civil rights.

7. Defendants Does 1-20 are unidentified individuals, officials, and entities that acted as employees or agents of Midway City and Wasatch County and aided in the conspiracy and other actions described herein.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1331 and 28 U.S.C. Section 1943 in that some of Plaintiffs' claims arise under the United States Constitution and under the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

9. This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C Section 1367 as the violation of Plaintiffs' civil rights claims under the Constitution of the of the State of Utah and the supplemental claims arise under a common nucleus of operative facts.

10. This action may be brought in the Central Division of the United States District Court, District of Utah, pursuant to the provisions of 28 U.S.C. Section 1391 (b) and (c).

## GENERAL ALLEGATIONS

11. This is a civil rights case involving a City and County acting through their authorized agents, conspiring to rid themselves of an individual and land use they consider undesirable, an individual that is considered an outsider, an individual that investigates the unlawful use of tax dollars by the County, an individual that has made numerous "annoying" and "harassing" GRAMA and other requests for information regarding the source and destination of tax dollars in Wasatch County, an individual that has appeared in the news questioning the legality of actions taken by Defendants in allocating and using public tax dollars and a land use opposed by the City and County residents. Defendants have used physical intimidation, unlawful criminal prosecution, unlawful and deceptive property taxation, unlawful taking of property, unlawful withholding of land use approvals, and unlawful confiscation of a firearm to

4

harass, intimidate, frighten, and ultimately drive Plaintiffs from their property in Midway City and to cause Plaintiffs to cease investigation of unlawful conduct in the County and City.

**Midway City uses an illegal decision-making process including illegal meetings to Impose Illegal Conditions on the Opening of The Hiking Inn.**

12. In 2015, Plaintiffs filed a conditional use application with Midway City to open a bed and breakfast business at 364 Tanner Lane in Midway, Wasatch County, Utah.

13. Although the zoning for the property permitted Bed and Breakfast lodging as a conditional use, the neighbors and the City were opposed to the conversion of the property from a single family house to a bed and breakfast from the outset, and they set about finding ways to stop the business from opening even if the procedures were illegal and unconstitutional. Accordingly, when the matter came before the City for consideration, the City tabled the matter so the City could meet with neighbors and consider how it could hinder or completely stop the bed and breakfast.

14. In Utah, a conditional use permit may only be rejected based upon substantial evidence on the record. Substantial evidence is evidence that is relevant and credible. To be relevant it must relate to the standards in the ordinance. Evidence against a conditional use permit application must not be based on public opinion.

15. The City specifically and purposefully ignored all of this. When the conditional use permit came before the City Council on or about April 8, 2015, the City tabled the matter so the City could meet in private, outside the usual hearing process, without public notice with neighbors who opposed the application and the neighbors could write the illegal conditions to be imposed on Plaintiffs. The conditions proposed by the City were those "that were identified by

those in attendance at the [private] meeting." Plaintiffs are informed and believe and therefore allege that this meeting with staff was held without giving any public notice required by State law. Accordingly, nearly everyone at the meeting were neighbors opposed to the application specifically contacted by the City and asked to participate. These neighbors and the City then proposed 11 conditions, most of which did not relate at all to the requirements of the City ordinance and were otherwise illegal.

16. For example, the neighbors sought to require that "as part of the issuance of the conditional use permit that the owner may be held legally liable if a guest of the facility injures … neighboring people or property while staying as a guest." The City, acting upon the desires of an ad hoc neighbor committee desired to make Plaintiffs responsible for all the actions of individuals staying on the property whether the individuals were on the property when the injury occurred or not. This condition would have essentially made Plaintiffs indemnitors to anyone in Midway for any actions of their guests while registered at The Hiking Inn.

17. The neighbors and City proposed special, elevated enforcement activity for the conditional use permit, enforcement activity not imposed on other conditional use holders in the City. Similarly, the City sought to impose site plan requirements above and beyond those imposed on other conditional use permit holders in the City. All of this was illegal but fully embraced by the City.

18. None of the conditions proposed by the neighbors and embraced by the City in this illegal meeting related to any standards or requirements set forth in the City zoning ordinances. Indeed, the document setting forth the proposed conditions made no effort whatsoever to relate the proposed conditions to any concern or evidence raised by any person or

6

related to any ordinance standard.  The proposed conditions were not proposed for any legitimate purpose such as to address standards required by law but were proposed for the illegal purpose of thwarting Plaintiff Lynn David from using his property in the manner in which he was lawfully entitled.

19. After it became obvious to the City that Plaintiffs would pursue legal action if it attempted to impose the proposed conditions, the City altered some of the conditions to make them less outrageous.  However, illegal conditions were still imposed, and the City's attempts to be rid of the business did not end.  It only marked the beginning of what Plaintiffs learned later to be an ongoing conspiracy and pattern of harassment and deliberate and continuing effort to delay, frustrate, and ultimately thwart Plaintiff Lynn David's lawful attempt to develop and utilize his property as he was entitled.  The City hoped to make it so time consuming, expensive, and frustrating to develop and operate its business that Plaintiff David would be forced to give up his business and his land use entitlements out of economic necessity.

20. Within 90 days after The Hiking Inn opened, Midway City enacted an ordinance banning all Bed and Breakfast Inns from residential neighborhoods in Midway City.  This action, aside from demonstrating the City's hostility to bed and breakfast inns made The Hiking Inn a nonconforming use.  The City then set about finding ways to compel The Hiking Inn to shut its doors and for its owner to leave the area.

21. At this point in time, Plaintiffs knew that it was a difficult process to open The Hiking Inn, but they were unaware of the future ongoing efforts to close the Inn.  Plaintiffs did not know that this action only represented the beginning of Midway City's and Wasatch County's efforts to expel The Hiking Inn and its owner.

7

**Midway City Physically Blocks The Hiking Inn and enlists Wasatch County to Wrongfully Prosecute Lynn David.**

22. Plaintiff David's business, The Hiking Inn (sometimes the "Inn"), is in the foothills of Midway City where winter snowfalls are deep and frequent.

23. For the workers and guests of The Hiking Inn, wintertime access to the Inn through the deep snow is essential for the business to remain open. This is especially true during community events that bring visitors to the Inn such as the Sundance Film Festival. Section 11.3.1 of the Midway City Snowplow Operation and Maintenance Manual requires snow to be plowed onto the "shoulder of the city street." It does not provide for snow to be plowed onto private property or deliberately piled in front of the entrance to private property. Nevertheless, in the winter of 2015 and 2016 and the winter of 2016 and 2017, Midway City snowplow drivers deliberately and repeatedly plowed wide and deep piles of ice and snow onto the Inn's property so as to block all entrances to The Hiking Inn. The Hiking Inn property was constantly filled with large amounts of snow plowed by the City. This physical invasion of the property now deliberately repeated over the years constituted a physical invasion and taking of Plaintiffs' property. Other homes and properties in the vicinity were kept clear or with much less snow but The Hiking Inn was singled out to be blocked.

24. Plaintiff David called Midway City several times to complain about the huge piles of snow plowed to block the entrances of the Inn. This did nothing to decrease the constant snow intrusion on the property.

25. On January 23, 2017, there was deep fresh snow on the roads of Midway City. Plaintiff David spent almost the entire day shoveling snow to open the entrances to The Hiking

Inn. There were guests staying at the Inn that needed the entrances open. After spending several hours clearing the snow, Plaintiff David left The Hiking Inn for a short time. Upon returning, Plaintiff David found that the access to the Inn was now completely blocked by piles of snow and hard ice plowed into The Hiking Inn's driveway. The pile of ice and snow moved by the City onto Plaintiffs' property was approximately 4 feet high and 6 to 8 feet wide. The snow and ice were so packed as to be impossible to shovel. Access to The Hiking Inn was completely blocked.

26.  The following morning, Plaintiff David arose early to take pictures of the huge pile of snow and ice before attempting to remove it. He was in the road across from the Inn observing and taking pictures of the snow piled on his property when a City snowplow rounded the turn and proceeded directly towards him. The Midway City Snowplow Operations Manual states that "when pushing snow" the snowplow "should be facing the direction that traffic flows, plowing to the right. The plow approaching Plaintiff David was in violation of this policy. The Midway City Snowplow Operations Manual also states that, "Heavy Duty vehicles are required to drive 5 miles under the posted speed limit, unless weather conditions warrant slower speeds." In this case, the snowplow was what the City Manual describes as a "heavy duty vehicle" weighing many tons and loaded with tons of road de-icing salt. The snowplow was moving in excess of the speed allowed in the Operations Manual and was not slowing down. Plaintiff David knew it would be difficult or impossible for the driver to stop the snowplow before it struck him. But it did not appear that the driver was making any effort to slow down. With a huge heavy truck fronted with a large steel snowplow approaching him at an excessive speed Plaintiff David's life was endangered, and he was justifiably frightened. It appeared that the

driver either did not see him (which seemed unlikely) or was deliberately trying to frighten him or even run him down.  Plaintiff David attempted to move out of danger but also drew a pistol he lawfully carried for self-defense.  Although Plaintiff David drew the weapon, he did not point the weapon at the driver or any other person.  He merely displayed the weapon to dissuade the driver from his dangerous and threatening driving. All these events were recorded on The Hiking Inn's security cameras.

27. Shortly thereafter, Wasatch County Sherriff officers arrived at the scene and arrested Plaintiff David for allegedly drawing a weapon in the presence of two or more people in an angry or threating manner in violation of Utah Code Ann §76-10-506 of the Utah Code. Plaintiff David was placed in handcuffs and transported against his will to the Wasatch County Jail.  Mr. David suffered great pain and discomfort from very tight handcuffs which the officers refused to adjust, barefoot contact with a freezing cell floor, and no water.

28. The driver was identified as Defendant Eric K. Mecham.  Mr. Mecham falsely claimed that Plaintiff David had pointed the gun at him.  Plaintiff David's gun was confiscated, and he was held until he was able to post bail in the amount of nearly $2,000.  Mr. David offered to show the officers what had occurred on the security video, but they refused.  Defendants were uninterested in video evidence.

29. The following day, January 25, 2017, the Midway City Council held a closed meeting to discuss the "Character, Professional Competence or Physical or Mental Health of an Individual."  Plaintiffs were unaware of this meeting that may have discussed them specifically. This was not an agenda item that gave notice to Plaintiffs that they would be the subject of discussion in an otherwise public meeting.  Plaintiffs have only recently learned that Mr. David

may have been the subject of this meeting and others in Midway City and Wasatch County. Plaintiffs did not know and could not have known that this meeting and other closed-door meetings may have been a part of a conspiracy to deprive Plaintiffs of their civil rights and to take Plaintiffs' property.

30. Plaintiffs have recently learned that they may have been the subject of secret meetings in which Midway City officials conspired to interfere with the prosecutorial process and bring severe criminal sanctions against Plaintiff Lynn David, sanctions not justified by Mr. David's conduct and sanctions that violate Mr. David's civil rights. Plaintiffs have recently requested the records of Midway City's closed meetings but only if those meetings concerned Mr. David as the subject of the meetings. Midway City has refused to produce minutes of those closed meetings and but has not denied that the meetings concerned Mr. David as the topic. By refusing to produce the records, the City has deliberately interfered and delayed Plaintiffs from learning of a conspiracy to take their property and to deny their civil rights. Midway City and Wasatch County continue to interfere with Plaintiffs' ongoing efforts to discover the existence of a conspiracy to deprive them of their civil rights and to take their property. Plaintiffs' still have not been able to obtain records that would prove or disprove a conspiracy to take their property and interfere with their civil rights and have filed a separate lawsuit seeking an order compelling Midway City and Wasatch County to produce records of closed meetings that concern the Plaintiff Lynn David.

31. Plaintiff David made further efforts to discover whether the City was interfering in the prosecution of the State's criminal case. To gain this information, Plaintiff David prepared various requests under the State Governmental Access and Management Act to obtain

information regarding the conduct of Midway City in interfering with his prosecution. Midway City and Wasatch County responded by informing Plaintiffs' lawyer that the City considered such efforts as "harassment" and that if such efforts did not cease, Mr. David would be the subject of motions for pretrial sanctions. Thus, the City and the County deliberately took efforts to cover up their ongoing conspiracy to violate Plaintiffs' civil rights and to take Plaintiffs' property.

32. Under Section 76-10-506 of the Utah Code, it is necessary for the prosecution to show that Mr. David's alleged unlawful conduct took place in the presence of two or more people aside from the party charged. Defendants Midway City and Wasatch County knew or should have known from the outset that the elements necessary to establish the crime did not exist. Among other things, there was not the statutorily required two or more people aside from Mr. David that witnessed the event. Accordingly, Defendants were without the means to establish the elements of the crime. Even though the State knew it could not establish the elements of the crime, Plaintiffs have recently learned that the State may have been repeatedly lobbied by its political subdivisions Midway City and Wasatch County to prosecute the case even though a crime had not been committed. Plaintiffs have still not been able to obtain the records from Wasatch County and Midway City that would establish or disprove the conspiracy to interfere. Plaintiffs continue to attempt to obtain these records.

33. Plaintiffs suffered damages including loss of business, loss of property, loss of income, loss of business reputation, and diminishment in value of his business.

34. On May 31, 2107, the court dismissed the criminal case against Plaintiff David on the grounds that the Defendants were unable to establish the elements of the crime. Plaintiffs did

not know or suspect until recently that the false charges were brought and maintained by the State at the improper insistence and demands of Midway City and Wasatch County who conspired to deprive Mr. David of his civil rights and his property.

### Wasatch County Wrongfully Doubles the Taxes on The Hiking Inn.

35. Although Plaintiff David knew that he had been charged with a crime and that the charges had been dismissed, Plaintiff David still did not know that all of this may be an ongoing effort to destroy his business and cause him to leave Midway City and Wasatch County. However, after the incidents previously described, Defendants continued to take action to drive Plaintiffs from the City.

36. Defendants looked to their taxing power to force Plaintiff David to close the Inn. Recognizing that the "power to tax is the power to destroy," Defendants conspired to illegally raise Plaintiff David's property taxes on The Hiking Inn.

37. In Wasatch County, if the property owner is not a resident of the property, taxes are assessed at nearly double the rate of homes owned by residents. Although Plaintiff Lynn David is a resident of Wasatch County and had been for several years, in 2018, Wasatch County, without any evidence and without giving Plaintiff David any notice, wrongfully determined that Plaintiff David was not a resident and assessed The Hiking Inn at nearly double the rate of previous assessments. Plaintiff David is informed and believes and therefore alleges that the arbitrary decision made by Wasatch County to assess Plaintiff David as if he was a non-resident was based on false information given to Wasatch County by the other Defendants including employees and agents of Midway City. In an ongoing effort to cover up its conspiracy to deprive Plaintiffs of their civil rights and deprive them of their property, Wasatch County has refused to

tell Plaintiff David why it claimed Plaintiff Lynn David was not a resident. In an effort to discover this information, Plaintiffs have filed a separate lawsuit to obtain information regarding what Plaintiffs believe to be a secret conspiracy to deprive Plaintiffs of their civil rights and to take their property without compensation.

38. Ultimately, Plaintiffs were able to establish that Mr. David was a resident of Wasatch County. But this required a great deal of effort including accounting for his whereabouts every day for the previous year.

### Midway City Redoubles Its Efforts to Drive the Plaintiffs from the City.

39. Following the 2017 snowplow incident, Midway City redoubled its efforts to block Plaintiffs' property with snow and ice. In December 2019 and January 2020 and on other dates, Midway City deliberately plowed large amounts of snow and ice on Plaintiffs' property to purposefully block access. The City's conduct in this regard constituted a physical invasion and taking of Plaintiffs' property prompting neighbors to comment about how Plaintiffs have been singled out by the City for poor treatment. The City has now repeatedly used and continues to use Plaintiffs' property for storage of unmelted snow and ice in violation of City policy and in violation of Plaintiffs' civil rights.

### FIRST CLAIM FOR RELIEF
(Deprivation of Right to Keep and Bear Arms)

40. Plaintiffs incorporate the foregoing allegations and reallege the same as though set forth fully herein.

41. The Second Amendment of the United States Constitution prohibits the government from infringing upon the right of the people to keep and bear arms.

42. Article 1 Section 6 of the Utah Constitution provides: "The individual right of the people to keep and bear arms for security and defense of self, family, others, property, or the state, as well as for other lawful purposes shall not be infringed…"

43. Although Defendants knew or should have known that Plaintiff Lynn David's conduct was not in violation of Section 76-10-506 of the Utah Code or any other statute, they confiscated Mr. David's gun in violation of the Second Amendment of the United States Constitution and Article 1 Section 6 of the Utah Constitution.

44. Defendants' conduct as described herein constituted a taking of Plaintiffs' property, in particular Plaintiffs' firearm in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article I Section 22 of the Constitution of the State of Utah.

45. Plaintiff David is entitled to a judgment and order that Defendants' conduct as described herein, constitutes a deprivation of Plaintiff David's right to keep and bear arms and constitutes a violation of 42 U.S.C. Section 1983 of the United States Code as well as a taking of Plaintiffs' property in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article I Section 22 of the Utah Constitution.  Plaintiff David is further entitled to an order restraining Defendants, and each of them, from any further illegal conduct; for monetary damages in an amount to be determined by the trier of fact, and; such other and further relief as the court deems just and proper including costs and attorney's fees pursuant to 42 U.S.C. 1988 of the United States Code.

## SECOND CLAIM FOR RELIEF
**(Equal Protection)**

46. Plaintiffs incorporate the foregoing allegations and reallege the same as though set forth fully herein.

47. At all relevant times, Plaintiffs have the constitutional right to be treated equally under the law as all other similarly situated individuals or entities. This right is secured by the Fourteenth Amendment to the United States Constitution and Article 1 §§ 7 and 24 of the Utah Constitution.

48. Defendants conspired to deprive Plaintiffs of these rights by imposing different standards and requirements upon Plaintiffs than it did for others, particularly other residents of Midway City.

49. Defendants' differential treatment was not rationally related to any legitimate governmental objective. The differential treatment was instead by desire to have the bed and breakfast, known as The Hiking Inn, close.

50. Defendants' conduct as described herein constituted a taking of Plaintiffs' property, in violation of the Fifth and Fourteenth Amendments of the United States Constitution and Article I Section 22 of the Constitution of the State of Utah.

51. Plaintiffs are entitled to a judgment and order that Defendants' conduct as described herein, constitutes a deprivation of Plaintiffs' right to equal protection under the law and constitutes a violation of 42 U.S.C. § 1983; constitutes a taking pursuant to the Fifth and Fourteenth Amendments of the Constitution of the United States and Article I Section 22 of the State of Utah; an order restraining Defendants, and each of them, from further illegal conduct; an

order that Plaintiffs are entitled to operate their business at The Hiking Inn without further harassment, criminal prosecution, or illegal taxation; and such other and further relief as the Court deems proper, including costs and attorney's fees.

### THIRD CLAIM FOR RELIEF
**(Privileges and Immunities)**

52.  Plaintiffs incorporate the foregoing allegations and reallege the same as though set forth fully herein.

53.  The Privileges and Immunities Clause of the United States Constitution guarantees that citizens of the several states will be treated the same. In its handling of Plaintiff David's petitions for land use approvals, Defendants denied Plaintiff David the protection of the Privileges and Immunities Clause of the United States Constitution in violation 42 U.S.C. § 1983.

54.  Plaintiff David is entitled to a judgment and order that Defendants' conduct as described herein constitutes a deprivation of Plaintiff David's privileges and immunities under the law and constitutes a violation of 42 U.S.C. § 1983 and a taking of property without just compensation pursuant to the Fifth and Fourteenth Amendments of the United States Constitution and Article I Section 22 of the Utah Constitution; an order restraining Defendants, and each of them, from any further illegal conduct; and such other and further relief as the court deems proper including costs and attorney's fees under 42 U.S.C. § 1988.

## FOURTH CLAIM FOR RELIEF
### (Civil Conspiracy)

55. Plaintiffs incorporate the foregoing allegations and reallege the same as though set forth fully herein.

56. As previously alleged, Defendants, and each of them, conspired and agreed among themselves to a wrongful, criminal action, to pursue an unfair and unequal taxation to deny land use approvals, and to deprive Plaintiff David of his civil rights and to take Plaintiffs' property without just compensation.

57. Each of Defendants committed the unlawful, overt acts complained of herein, in furtherance of their conspiracy.

58. Plaintiff David is entitled to a judgment and order that Defendants' conduct, as described herein, constitutes a civil conspiracy under the law and constitutes a violation of 42 U.S.C. § 1983 and a taking of Plaintiffs' property without compensation in violation of the Fifth and Fourteenth Amendments of the United States and Article I Section 22 of the Utah Constitution; an order restraining Defendants, and each of them, from further illegal conduct; and such other and further relief as the court deems proper, including monetary damages in the amount of at least $1 million and costs and attorney's fees under 42 U.S.C. § 1988.

## FIFTH CLAIM FOR RELIEF
### (Taking of Property Without Just Compensation)

59. Plaintiffs incorporate the foregoing allegations and reallege the same as though set forth fully herein.

60. Article I Section 22 of the Utah Constitution and the Fourth and Fifth Amendments of the United States Constitution prohibit the taking of private property without just compensation.

61. Defendant Midway City, in violation of its own policy manual and in violation of other provisions of law, including trespass, has repeatedly plowed snow on Plaintiffs' property and then stored that snow on Plaintiffs' property. This has been done not only for the convenience of Midway City in storing its snow but in a deliberate effort to block Plaintiffs' property and make it inaccessible. This constitutes the physical taking of Plaintiffs' property. This in turn is part of a conspiracy with other defendants to drive Plaintiffs from the City of Midway and from Wasatch County.

62. Defendant Midway City's actions in this regard constitute a taking of Plaintiffs' property in violation of Article I Section 22 of the Utah Code and the Fourth and Fifth Amendments of the United States Constitution.

63. Plaintiffs are entitled to just compensation for the physical taking of their property.

### SIXTH CLAIM FOR RELIEF
**(Inverse Condemnation)**

64. Plaintiffs incorporate the foregoing allegations and reallege the same as though set forth fully herein.

65. Defendants' actions as previously described constitute an administrative taking of Plaintiffs' property and a deliberate effort to drive Plaintiffs from their own property in violation

of Article I Section 22 of the Utah Constitution and the Fifth and Fourteenth amendments of the United States Constitution entitling the Plaintiffs to just compensation.

WHEREFORE, Plaintiffs pray for compensation under all causes of action for the taking of their property and violation of their civil rights as described herein and for attorney's fees.

## JURY DEMAND

Plaintiffs, by and through their attorneys, hereby request trial by jury of all issues so triable in this case.

DATED this 31st day of January, 2020.

FETZER SIMONSEN BOOTH & JENKINS, P.C.

/s/ *Gregory M. Simonsen*