FILED
2021 DEC 14 PM 1:52
CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT,
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LYNN A. DAVID, an individual, and THE LAD COMPANY CO dba THE HIKING INN,<br><br>       Plaintiffs,<br><br>v.<br><br>MIDWAY CITY, a municipality and a political subdivision of the State of Utah; WASATCH COUNTY, a political subdivision of the State of Utah; ERIK K. MECHAM; and JOHN DOES 1-20;<br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER GRANTNG WASATCH COUNTY'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:20-cv-00066-BSJ<br><br>Judge Bruce S. Jenkins |

Defendant Wasatch County, Utah's *Motion for Summary Judgment* (ECF-54) came before the Court for oral argument on November 19, 2021. Mr. Todd Weiler appeared on behalf of Plaintiffs Lynn David and the LAD Company dba as The Hiking Inn (collectively the "Plaintiffs"). Jesse C. Trentadue and Michael Homer appeared on behalf of Defendant Wasatch County (the "County"). Having consider the parties' submissions and matters addressed during oral argument, the Court hereby GRANTS the County's *Motion for Summary Judgment* and dismisses with prejudice and on the merits Plaintiffs' claims against Wasatch County for the reasons set forth below.

# I.

## BACKGROUND

Plaintiffs Lynn David and The LAD Company do business as The Hiking Inn, a "Bed and Breakfast" ("B&B") establishment in Midway City, Utah. Plaintiffs have asserted a number of claims against Wasatch County, most of which are based upon the County's alleged violation of their civil rights under both the United States and Utah *Constitutions*. It is important to note, however, that no Wasatch County official or employee is named as a defendant or even identified as having engaged in any wrongful act or omission involving Plaintiffs. This fact is important because, as will be explained hereinbelow, without a Wasatch County official or employee named as a defendant or otherwise identified as having caused an injury to Plaintiff, there is no factual or legal basis for any liability on the part of the County with respect to the majority of Plaintiffs' constitutional claims. Another important fact to note is that fact discovery ended on July 1, 2021 and that Plaintiffs' expert disclosures were due on August 2, 2021.[1] This is important, because Plaintiffs presented no evidence to support their claims and the time for acquiring that evidence has expired.

---

[1] *First Amended Scheduling Order*, ECF-46 at ¶¶ 1 – 2.

## II.

## PLAINTIFFS' CLAIMS

Plaintiffs' claims against Wasatch County arise out of two events. The first occurred in 2016 and involved the County's attempt to tax the real property upon which The Hiking Inn is located as commercial rather than residential property, and to increase the tax levy on that land because of a corresponding increase in the market value of that real property. The second incident occurred in 2017 when Mr. David was arrested for having purportedly threatened Midway City employee Erik K. Mecham with a pistol, which resulted in Mr. David being criminally charged and his pistol seized. The weapon was subsequently returned to Mr. David after the criminal charges were dismissed.[2]

Plaintiffs' *Amended Complaint* consists of seven causes of action. But, only five of their claims implicate Wasatch County. These are their *First, Second, Third, Fifth* and *Seventh Claims for Relief.*

### A.    First Claim for Relief:

This is a claim by Mr. David against the County under 42 U.S.C. § 1983 and the Utah State *Constitution* for a denial of the right to keep and bear arms as well as an unlawful taking involving his pistol. The seizure of the pistol occurred when Mr. David was arrested on January 24, 2017, by County officers and charged with having threatened

---

[2]  Plaintiffs also claim that their rights were violated based on Midway City's requirement of a "Conditional Use Permit" for them to operate The Hiking Inn in a residential neighborhood, and the City having plowed snow on to The Hiking Inn property. None of these matters, however, involved either the County or a County employee.

a Midway City employee, defendant Mecham, with that weapon. The pistol was seized by law enforcement officials as evidence. The seizure of that pistol was temporary in that the weapon was returned to Mr. David after the charges that had been filed against him by the County Prosecutor were eventually dismissed. Mr. David has not asserted a claim for wrongful arrest or the illegal seizure of his person.

**B.     Second Claim for Relief**:

This is likewise a claim by Plaintiffs against Wasatch County under 42 U.S.C. §1983 and Utah State *Constitution* for the denial of equal protection. Plaintiffs' equal protection claim against the County arises out of the County's decision in 2016 to tax The Hiking Inn property as commercial rather than residential, and to increase the tax levied on that property because of a corresponding increase in the value of the property as well as the seizure of Mr. David's pistol and his prosecution for having threatened Mr. Mecham with that weapon. Plaintiffs have not alleged, nor have they shown that they are a member of a protected class. Thus, their equal protection claim must be analyzed under and meet the requirements for a "class-of-one", which requires them to have evidence that others similarly situated were treated differently.

**C.     Third Claim for Relief**:

This is a civil conspiracy claim brought against the County under 42 U.S.C. §1983 and the Utah *Constitution*. Plaintiffs essentially assert that unidentified County official conspired and agreed with other unidentified Midway City officials to bring a wrongful

criminal prosecution against Mr. David, to pursue an unfair and unequal taxation of The Hiking Inn property, to deprive Plaintiffs of their civil rights, and to take Plaintiffs' property without just compensation.[3] But these allegations are conclusory in nature, and Plaintiffs failed to allege that any violation of their civil rights was the result of a County policy, custom or practice.

**C.**   **Fifth Claim for Relief**:

Plaintiffs' *Fifth Claim for Relief* is a claim for "inverse condemnation." It is not clear from the *Amended Complaint* whether the County is a Defendant in this cause of action. The only "taking" by the County was the temporary seizure of Mr. David's pistol as evidence of a crime, which was not a taking.

**D.**   **Seventh Claim for Relief**:

Plaintiffs' *Seventh Claim for Relief* is brought against the County under Utah's *Pattern of Unlawful Activity Act,* and it appears to be fatally flawed for a number of reasons. First, the Court lacks jurisdiction due to Plaintiffs' failure to timely file a *Notice of Claim* under the *Utah Governmental Immunity Act* ("*UGIA*"). Second, even if the Court had jurisdiction, Wasatch County is immune for such claim because the *UGIA* does not waive immunity for intentional torts and that law specifically includes a retention of immunity for the very conduct at issue in this case.

---

[3] ECF-36, *Amended Complaint,* ¶ 68.

**E.     Punitive Damages Claim**:

Plaintiffs have also included a claim for punitive damages.  But that claim is directed at the County rather than a County official or employee.

## III.

## UNDISPUTED FACTS

In its *Motion for Summary Judgment*, the County proffered the following facts as being both undisputed and entitling it to summary judgment:

1.      The Hiking Inn is located at 364 Tanner Lane in Midway, Utah.[4]

2.      Lynn David purchased the property that is now The Hiking Inn in 2011 as Trustee of the Lynn A. David Revocable Trust.[5]

3.      In 2014 or 2015, Mr. David decided to use the property as a B&B.[6]

4.      At the time, Midway allowed B&Bs "as a conditional use in all zones where they are not specifically excluded by the zoning requirements of that zone and by private Covenants, Conditions, and Restrictions (CC&Rs) of the development and if the establishment complies with said CC&Rs and [other enumerated] requirements."[7]

5.      Mr. David applied to Midway for a conditional use permit ("CUP") for The Hiking Inn in the spring of 2015.[8]

6.      Wasatch County had no involvement in the CUP matter, which was solely within the jurisdiction of Midway City.

---

[4] *Amended Complaint*, ECF-36 at ¶¶ 1 – 2.
[5] *David Deposition*, Ex. 1 at 30 – 31.
[6] *Id.* at 37.
[7] *Midway Code* (2005), Ex. 3 § 16.13.360.
[8] *David Depo.*, Ex. 1 at 51.

7.      The CUP for The Hiking Inn was approved by the Midway City Council on April 22, 2015.[9]

8.      In 2016, Wasatch County sent Mr. David a *Notice of Property Valuation & Tax Change*, indicating that the property value had increased from $685,000 (approximately the 2011 purchase price) to $825,614.[10]

9.      The notice also indicated that the County considered the Property to be commercial and non-residential, and that it would be taxed accordingly.[11]

10.     Mr. David appealed both the property value and the tax change on August 19, 2016.[12]

11.     In his appeal, Mr. David stated, "If the County Board of Equalization does impose the proposed increase in my real estate taxes, I will immediately cease operating The Hiking Inn because all of the potential profit from operating the business will be eliminated. The fate of The Hiking Inn rests in the hands of the members of the County Board of Equalization."[13]

12.     A hearing was held, and evidence was presented by Plaintiffs and the County.   On August 31, 2016, the Board of Equalization issued an opinion (1) sustaining the property value as determined by the Wasatch County Assessor; (2) determining that the Property was Mr. David's primary residence; (3) concluding that 26% of the total square footage was used to operate the B&B; and (4) ruling that the portion of the Property used to operate the Hiking Inn did not qualify for the residential exemption but should be taxed as commercial property.[14]

---

[9] *Id.* at pp. 3-4; *Report of Action* Ex. 13; *Wilson Dec.*, Ex.4 ¶10.
[10] *Tax Records*, Ex.43 at WASH000057.
[11] *See id.; see also Tax Records*, Ex. 43 at WASH000039–41.
[12] *Id.* at WASH000052–54.
[13] *Id.* at WASH000054.
[14] *Id.* at WASH000039 – 41.

13.     Wasatch County and the Plaintiffs could have appealed from that decision to the State Tax Commission.[15] For whatever reason, they elected not to do so and, as a consequence, the Board of Equalization's adjudicated decision was a final determination of the tax issues.

14.     Mr. David has alleged that "in the winter of 2015 and 2016 and the winter of 2016 and 2017, Midway City snowplow drivers deliberately and repeatedly plowed wide and deep piles of ice and snow onto the Inn's property so as to block all entrances to the Hiking Inn."[16]

15.     Mr. David claims that on January 23, 2017, he came home to find that snow had been plowed onto his driveway.[17]

16.     Mr. David "perceived" the snow in his driveway as a "threat."[18]

17.     On January 24, 2017, when Mr. David went to shovel the snow from The Hiking Inn's driveway, he took a handgun with him.[19]

18.     Mr. David estimates that he owns twenty firearms: ten handguns and ten long guns.[20]

19.     Mr. David did not know which Midway employee had plowed snow the night before or which employee would be plowing snow that day.[21]

20.     While shoveling snow, Mr. David crossed the street to take photographs of The Hiking Inn.[22]

---

[15] See U.C.A. §§59-2-1004(2)(a) and 59-2-1006.
[16] *Amended Complaint*, ECF-36 ¶ 24.
[17] *David Depo.*, Ex. 1 at 124–25.
[18] *Id.*
[19] *Id.*
[20] *Id.* at 21–22.
[21] *Id.* at 141–42.
[22] *Id.* at 122–23.

21.     Mr. David stood on the corner of Tanner Lane and 350 North.[23]

22.     Mr. David saw a Midway snowplow turn the corner of 310 North and drive north toward him and The Hiking Inn.[24]

23.     Mr. David claims he felt threatened by the snowplow as he stood on the corner.[25]

24.     As the snowplow passed him, Mr. David "pulled the gun out of [his] right pocket and showed it to him."[26] He stated he did so "to avoid what I felt was future violence."[27]

25.     The snowplow was driven by Midway public works employee defendant Eric Mecham.[28]

26.     Defendant Mecham said that Mr. David had pointed the pistol at him.[29]

27.     Defendant Mecham reported the incident to his supervisor, Cory Lott, who told him to call the police.[30]

28.     Defendant Mecham called dispatch for Wasatch County Sheriff's Office to report what had happened.[31]

29.     Heber City Police Chief David Booth was the first to arrive at the scene. He "removed the gun from [Mr. David] for safety purposes."[32]

---

[23] *Id.*
[24] *Id.* at 123.
[25] *Id.* at 124, 137.
[26] *David Depo,* Ex. 1 at 124.
[27] *Id.* at 137–38.
[28] *Mecham Depo.,* Ex. 35 at 21-27.
[29] *Criminal Records,* Ex. 44 at WASH00006.
[30] *Id.* at 20-21.
[31] *Id.* at WASH000031; *see also David Depo,* Ex. 1 at 151.
[32] *Id.* at WASH000006; *David Depo.,* Ex. 1 at 151.

30.     Chief Booth did not remove any other firearms from Mr. David or the Hiking Inn.[33]

31.     Chief Booth was joined by five deputies from the Wasatch County Sheriff's Office.[34]

32.     Deputy Brandon Rose reported that the gun was "loaded with seven rounds in the magazine and one in the barrel."[35]

33.     Defendant Mecham told Deputy Rose that "as he was plowing past Lynn [David]'s residence Lynn came to the edge of the road and pulled a gun out. Eric told me Lynn had a black handgun in his hand and pointed it in his direction and waved it in the air. Eric told me that this made him feel threatened and he believed Lynn was going to shoot him."[36]

34.     Mr. David told Deputy Rose "that he felt as though he had the right to protect his property. Lynn told me that the plows were hurting his business by blocking his driveway."[37]

35.     Mr. David was arrested and booked into the Wasatch County Jail.[38]

36.     Mr. David was charged with threatening defendant Mecham with a weapon, a Class A misdemeanor, in violation of Utah Code section 76-10-506.[39]

37.     The charge against Mr. David was eventually dismissed without prejudice after which Mr. David immediately went to the Wasatch County Sheriff's Office and asked for his gun back.[40]

---

[33] *See id.*
[34] *Criminal Records*, Ex. 44 at WASH000004.
[35] *Id.* at WASH000006.
[36] *Id.*
[37] *Id.* at WASH000007.
[38] *Id.* at WASH000008.
[39] *Id.*
[40] *David Depo.*, Ex. 1 at 152.

38.     Mr. David was told that he would have to wait thirty days to see if the dismissal of his criminal charge was appealed.[41]

39.     The County did not appeal the Court's decision and Mr. David received his gun "approximately 30 days later."[42]

40.     Plaintiffs have no evidence of any agreement between a Midway employee or official and/or a Wasatch County employee or official to violate Mr. David's or The Hiking Inn's constitutional rights or to otherwise harm them.[43]

41.     Although Mr. David testified during his deposition that he was "[p]otentially" aware of such agreement, he explained this was based on the fact former-Mayor Bonner testified she spoke with her brother-in-law who was the Wasatch County Sheriff and those conversations "could have had comments that affected [him] personally and The Hiking Inn."[44] But under cross examination, Mr. David acknowledged that he was "not privy to [those] conversation[s]" and has no independent information about what was said during those conversations.[45]

42.     Mr. David also pointed to conversations between Midway and Wasatch County Prosecutor McKay King as evidence of a conspiracy but again, under cross examination, he confirmed he did not have any independent information about those conversations.[46]

43.     Plaintiffs have not identified a specific, official Wasatch County policy or custom that caused the alleged constitutional violations.

44.     Plaintiffs have not alleged that a final decision by a Wasatch County policymaker caused the alleged constitutional violations.

---

[41] *Id.*
[42] *Id.*
[43] *See id* at 156-59, 232.
[44] *Id.* at 157.
[45] *Id.* at 157–58; *see also id.* at 230–31.
[46] *Id.* at 158; *see also id.* at 50–51, 159, 190.

45.     Plaintiffs have not alleged that Wasatch County failed to train or supervise employees or officials, which in turn caused the alleged constitutional violations.

46.     Plaintiffs did not file a *Notice of Claim* with Wasatch County, [47] which is required by the Utah Governmental Immunity Act ("*UGIA*"),[48] and that deprives the Court of subject matter jurisdiction over this cause of action.

47.     Utah's *Pattern of Unlawful Activity Act* requires Plaintiffs to show the existence of a "pattern of unlawful activity", which means coming forward with evidence that defendants engaged in conduct that constitutes the commission of at least three episodes of related unlawful activity otherwise referred to as "predicate acts".

48.     Plaintiffs allege in the *Amended Complaint* a series of predicates which are listed under the Act's definition of "unlawful activity," including threats to influence official or political action; official misconduct; obstruction of justice; acceptance of bribe or bribery to prevent criminal prosecution; written false statements; retaliation against a witness, victim, or informant; and extortion or bribery to dismiss criminal proceedings.[49]

49.     Other than generally alleging that these alleged unlawful activities had occurred, Plaintiffs fail to specify which Defendants engaged in which unlawful activities and that, standing alone, renders this *Claim for Relief* legally deficient because the Act requires that: "In all actions under this section the elements of each claim or cause of action **shall be stated with particularity against each defendant**."[50]

50.     Furthermore, Plaintiffs have neither alleged nor shown that a Wasatch County public servant committed and/or engaged in a single unlawful activity much less a pattern of unlawful act as required by the *Pattern of Unlawful Activity Act*.[51]

---

[47] *Suppl. Resp. to Discovery*, Ex. 42 at 3.
[48] U.C.A. § 63G-7-401.
[49] *See Amended Complaint*, ECF-36 at ¶¶ 90–94.
[50] U.C.A. §76-101605(7) (emphasis added).
[51] See County *Motion for Summary Judgment* ECF-54 at pp. 6 through 14.

Plaintiffs admitted, without qualification or comment, paragraphs 1, 3, 4, 5, 8, 11, 14, 15, 18, 19, 22, 27, 28, 30, 31, 34, 38, 39, and 48 of the facts submitted by the County.[52]  In response to paragraphs 2, 6, 7, 9, 12, 13, 16, 17, 20, 21, 23, 24, 25, 26, 32, 33, 35, 36, 37, 41, 42, 46, and 47 of the facts submitted by the County, Plaintiffs admit the facts contained in those paragraphs but proffer additional facts that were not responsive to and/or did not contradict the County's facts, which is insufficient to create a genuine dispute of material fact so as to preclude summary judgment.[53]  Furthermore, the additional facts proffered by Plaintiffs consisted of conclusory or argumentative statements and, in most instances, were not supported by refence to evidence in the record.  Consequently, the Court does not consider them in ruling on the County's *Motion for Summary Judgment*.[54]

---

[52] *Plaintiffs' Opposition Memorandum* at pages 28 through 35.

[53] *See, e.g., Walton v. N.M. State Land Off.*, 49 F. Supp. 3d 920, 932 (D.N.M. 2014), *supplemented*, 113 F. Supp. 3d 1178 (D.N.M. 2015) (unpublished) (considering a fact undisputed where the non-moving party responded with "an additional fact that does not controvert Walton's asserted fact").  "A factual dispute is genuine when there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Seamons v. Deseret Mut. Benefit Administrators*, No. 2:14-CV-00499-DN, 2017 WL 79959, at *6 (D. Utah Jan. 9, 2017) (unpublished) (cleaned up).  And, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Tasila v. Isbell*, No. 2:12-CV-01115, 2015 WL 1467589, at *1 (D. Utah Mar. 30, 2015) (unpublished) (cleaned up).

[54] *See Fed. R. Civ. P.* 56(c)(1); *DUCivR* 56-1(c)(3)(requiring that an opposition include "a citation with particularity to the evidence upon which the non-moving party relies to refute the fact.") "[A] party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; instead, he must set forth specific facts showing that there is a genuine issue for trial." *Curtis v. Translogic Corp.*, 15 F. App'x 727, 728-29 (10th Cir. 2001) (unpublished)(cleaned up).

Plaintiffs "deny" paragraphs 10, 43, 44, 45, 49 and 50 of the County's *Statement of Facts*. But they do not support their denials with reference to any evidence. Plaintiffs merely state that they deny the facts asserted, without citation to any document or evidence in the record. Such denials, however, are defective.[55] Rather than being disputed these matters should be and are deemed by the Court to be admitted.[56]

In paragraph 40 of its *Statement of Facts*, the County alleged that: "Plaintiffs have no evidence of any agreement between a Midway employee or official and/or a Wasatch County employee or official to violate Mr. David's or The Hiking Inn's constitutional rights or to otherwise harm them."[57] In response, Plaintiffs deny those facts and further state that:

> Wasatch County refused to review the video footage from Plaintiff's security cameras which should that Plaintiff did not point a weapon at Mr. Meacham. Further state that the prosecutor told Plaintiff's attorney that local government officials wanted Plaintiff's head on a platter.[58]

In support of that denial, Plaintiffs reference paragraph 4 through 6 of Mr. David's *Declaration*.[59] But paragraphs 4 through 6 of Mr. David's *Declaration* do not support Plaintiffs' denial of these facts insofar as they only discuss the alleged snow plowing of

---

[55] *See id.*

[56] *Fed. R. Civ. P.* 56(c)(3); *United States v. Sazama*, 88 F. Supp. 2d 1270, 1272 (D. Utah 2000)(holding facts in the motion for summary judgment "are . . . rightfully deemed admitted" given the opposition "fails to cite any disputed facts, material or otherwise").

[57] Wasatch County's *Statement of Facts*, ECF-54, at page 12 ¶50.

[58] Plaintiff's *Opposition Memorandum*, ECF-64 at page 33 ¶40.

[59] *Id.*

The Hiking Inn property,[60] which did not involve the County or a County employee. More importantly, even if the "unsupported" facts set out in Plaintiffs' denial were true, they do not evidence any agreement between Midway City employees or official and County employees or officials to violate Plaintiffs' civil rights or to otherwise cause them harm.[61]

The Court notes, too, that Plaintiffs' arguments in opposition to the County's *Motion for Summary Judgment* do not include any analysis of purported disputes of fact precluding the granting of summary judgment or how those purported disputes of fact are material to the arguments proffered by the County in support of its *Motion.* The Court is not obligated to comb the record in order to make Plaintiffs' arguments for them.[62] Having reviewed and considered Plaintiffs' responses to Wasatch County's factual assertions, including the additional facts proffered by Plaintiffs as well as the County's objections to that proffer, the Court concludes that Plaintiffs have failed to raise an issue of material fact that precludes it from granting of summary judgment.

---

[60] See ECF-64-1, at page 2 ¶¶ 4 through 6.

[61] Plaintiffs contend that the conspiracy was formed during a closed meeting of the Midway City Council that occurred on January 25, 2017. The Court has reviewed a recording of that meeting and it does not evidence the formation of a conspiracy to violate Plaintiffs' civil rights. *See Order Dismissing Plaintiffs' Claim,* ECF-81.

[62] *See Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1199 (10th Cir. 2000).

# IV.

## ANALYSIS OF PLAINTIFFS' CLAIMS

The Court will separately address each of Plaintiffs' claims that are applicable to the County and why they should be dismissed on the merits with prejudice and judgment entered in favor of the County. But prior to doing so, the Court will discuss general principles of law that apply to and dispose, in whole or in part, of Plaintiffs' claims irrespective of any consideration as to the merits of Plaintiffs' claims.

### A.    GENERAL PRINCIPLES OF LAW.

The following points of law and/or failures of proof, standing alone, require the granting of Wasatch County's *Motion for Summary Judgment*.

#### (1) Failure to allege or prove a basis for municipal liability under federal law.

Plaintiffs specifically named Wasatch County as a defendant in their *Amended Complaint* but do not name any County official or employee as a defendant. A municipality, however, may only be found liable under section 1983 "for its own unconstitutional and illegal policies."[63] In other words, a "municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiffs."[64] A municipality is liable under § 1983 "if the governmental body itself 'subjects' a person to

---

[63] *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998).
[64] *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).

a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation."[65] Plaintiffs must allege and ultimately show three elements for municipal liability claim: "(1) official policy or custom, (2) causation, and (3) state of mind."[66] Plaintiffs have failed to allege or show all three of these elements.

"A challenged practice may be deemed an official policy or custom for § 1983 municipal liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision."[67] "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."[68]  Plaintiffs have not alleged that any official County policy or custom deprived them of their Second or Fourteenth Amendment rights. Instead, Plaintiffs claim they were treated differently than other B&B owners and criminal defendants but do not accompany those allegations with reference to an official policy, practice or custom that was the moving force behind the County's actions.  Nor have Plaintiffs presented evidence of any such municipal policy,

---

[65] *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. NYC Dept. of Social Servs.*, 436 U.S. 658, 692 (1972)).
[66] *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 769 (10th Cir. 2013); *see also Connick*, 563 U.S. at 60 ("Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." (quoting *Monell*, 436 U.S. at 691)).
[67] *Schneider*, 717 F.3d at 770.
[68] *Connick*, 563 U.S. at 60.

practice, or custom giving rise to a violation of their constitutional rights.  Accordingly,

Plaintiffs' *First*, *Second*, and *Third Claims for Relief* should be dismissed with prejudice.

### (2) Failure to allege or prove a basis for municipal liability under State law.

Plaintiffs likewise allege violations of Mr. David's rights under the Utah

*Constitution*, specifically Article 1 Sections 6 (right to keep and bear arms), 7 (due

process), 22 (takings), and 24 (equal protection). But again, they have failed to allege

and/or  prove a claim under Utah state law. In instances where plaintiffs allege that a

municipality violated their state constitutional rights, the Utah Supreme Court has

"borrow[ed] from Section 1983 jurisprudence."[69]  A "plaintiff seeking to prove that a

municipality committed a flagrant violation must show an 'action pursuant to official

municipal policy of some nature caused a constitutional tort.'" "And, in order for an

action pursuant to an official municipal policy to constitute a flagrant violation, the

plaintiff must show (1) the existence of a municipal policy or custom, (2) that this policy

or custom evidences a deliberate indifference to the plaintiff's constitutional rights, and

(3) that this policy or custom was closely related to the ultimate injury."[70]

Simply stated, Plaintiffs have not shown or even alleged the existence of a

municipal Policy, practice, or custom giving rise to any State constitutional injury, let

alone one that evidences deliberate indifference to Mr. David's constitutional rights.

---

[69] *Kuchcinski v. Box Elder County*, 450 P.3d 1056, 1068 (Utah 2019).
[70] *Id.* (quoting *Monell*, 436 U.S. at 691).

Neither have Plaintiffs shown that either their federal or state constitutional rights were violated or that any injury was caused to them by the County. Therefore, the civil rights claims set forth in Plaintiffs' *First, Second,* and *Third Claims for Relief* should also be dismissed with prejudice.

### (3)   **Failure to prove causation with respect to any civil rights violation**.

"To establish the causation element [for a civil rights violation], the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally protected right.'"[71]   Plaintiffs "must therefore 'demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'"[72]   "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."[73]

The requisite state of mind that a plaintiff must allege and prove for a claim of municipal liability under § 1983 may vary depending on whether the plaintiff alleges that the municipality acted pursuant to an unlawful policy or custom, or whether an unlawful action was taken pursuant to a facially lawful policy or custom.[74]   Generally, "the prevailing state-of-mind standard for a municipality is deliberate indifference regardless

---

[71] *Schneider,* 717 F.3d at 770.
[72] *Id.* (citation omitted).
[73] *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 405 (1997).
[74] *McDonald v. Davis County,* 2021 WL 2940604, at *7 (July 13, 2021).

of the nature of the underlying constitutional violation."[75] "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."[76]

"In most instances, notice can be established by proving the existence of a pattern of tortious conduct." "In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction."[77]   Plaintiffs have failed to show that the County was deliberately indifferent in its actions, as (1) there was no official County policy or custom and (2) there was no notice of any policy or custom related to the alleged constitutional violations. Accordingly, the state constitutional claims contained in Plaintiffs' *First, Second* and *Third Claims for Relief* should be dismissed with prejudice.

### (4)   Lack of Subject Matter Jurisdiction

Plaintiffs' *Seventh Claim for Relief* based on the *Pattern of Unlawful Activity Act* is subject to *UGIA*."[78]   The *UGIA* includes a requirement that "before filing suit against a

---

[75] *Schneider*, 717 F.3d at 771 n.5 (citation omitted).
[76] *Id.* at 771.
[77] *Id.*
[78] *See* U.C.A. § 63G-7-102(2) (defining "claim" as "any asserted demand for or cause of action for money or damages, whether arising under the common law, under state constitutional provisions, *or under state statutes*, against a governmental entity or against an employee in the employee's personal capacity." (emphasis added)).

governmental entity, an injured party must first file a notice of claim with that entity

within one year after the claim arises, and the suit itself must be filed within a year after

the claim is denied."[79] "Filing a proper notice of claim is a jurisdictional prerequisite to

any action against a governmental entity in the district court." [80] And, this is a defect that

cannot be cured because the *Notice of Claim* must be filed "within one year after the

claim arises." [81]

A claim "arises when the statute of limitations that would apply if the claim were

against a private person begins to run." [82] And, "[g]enerally a statute of limitations

begins to run upon the happening of the last event necessary to complete the cause of

action."[83] Under Section 76-10-1605(9), the statute of limitations for a claim under the

*Pattern of Unlawful Activity Act* begins to run when "the conduct prohibited by Section

76-10-16-03 terminates or the cause of action accrues, whichever is later."[84] Thus,

Plaintiffs' *Pattern of Unlawful Activity Act* cause of action, *Seventh Claims for Relief,*

should be dismissed for a want of subject matter jurisdiction.

---

[79] *McTee v. Weber Ctr. Condo. Ass'n*, 2016 UT App 134, ¶ 12, 379 P.3d 41.
[80] *Anderson v. Eyre*, 2015 UT App 148, ¶ 4, 353 P.3d 170; *see also Wheeler v. McPherson*, 2002 UT 16, ¶ 9, 40 P.3d 632 ("Compliance with the Immunity Act is a prerequisite to vesting a district court with subject matter jurisdiction over claims against governmental entities."); *Patterson v. Am. Fork City*, 2003 UT 7, ¶ 10, 67 P.3d 466 ("A plaintiff's failure to comply with the UGIA's notice of claim provisions deprives the trial court of subject matter jurisdiction.").
[81] U.C.A. § 63G-7-402.
[82] U.C.A. § 63G-7-401(1)(a).
[83] *Jensen v. IHC Hosps., Inc.*, 2003 UT 51, ¶ 75, 82 P.3d 1076.
[84] *McTee v. Weber Ctr. Condo. Ass'n*, 2016 UT App 134, ¶ 12, 379 P.3d 41.

### (5)      Governmental Immunity

In Utah, "each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function" unless immunity has been waived.[85]  To determine whether immunity has been waived, courts engage in a three-part inquiry.[86]  "First, [they] examine whether the activity undertaken is a governmental function."[87]  "Second, [they] determine whether governmental immunity was waived for the particular activity."[88]  "Finally, [they] look to see whether immunity has been reinstated through a statutory exception to the immunity waiver." [89]

Application of this three-step analysis demonstrates that the County retains immunity for Plaintiffs' claim under the *Pattern of Unlawful Activity Act*.  At the first step, the County's alleged activities are unquestionably governmental functions.  The *UGIA* defines "governmental function" broadly as "each activity, undertaking, or operation of a governmental entity" or a "department, agency, employee, agent, or officer of a governmental entity."[90]  Whereas, taxing, investigating crimes and prosecuting criminal conduct have historically been recognized as "governmental functions."[91]

---

[85] U.C.A. § 63G-7-201(1).
[86] *Larsen v. Davis Cnty. Sch. Dist.*, 2017 UT App 221, ¶ 10, 409 P.3d 114.
[87] *Id.* (citation and internal quotation marks omitted).
[88] *Id.*
[89] *Id.*
[90] U.C.A. § 63G-7-102(4).
[91] *See, e.g., Bennett v. Bow Valley Dev. Corp.*, 797 P.2d 419, 423 (Utah 1990) ("The inspection and acceptance of subdivision improvements are governmental functions for which immunity

The second step of the inquiry asks whether there is a waiver of immunity that applies to their *Pattern of Unlawful Activity* claim.  A review of the *Act* reveals it does not waive immunity for intentional torts, such as Plaintiffs' claim.[92]  There are simply no waivers for intentionally tortious conduct.[93]  This limit to the *Act's* waivers is "fatal" to any intentional tort asserted by Plaintiffs such as their *Seventh Claim for Relief.*[94]  Moreover, the inclusion of "local governmental entities" in the definition of "person" for purposes of the *Pattern of Unlawful Activity Act* does not constitute a waiver of immunity for any claim brought under that *Act.*[95]  The immunity afforded governmental entities

---

has not been waived."); *DeBry v. Salt Lake Cnty.*, 835 P.2d 981, 987 (Utah Ct. App. 1992), *aff'd sub nom. DeBry v. Noble*, 889 P.2d 428 (Utah 1995) ("[T]he issuance of permits and certificates of occupancy, and the administering of building inspections as identified by the legislature in section 63–30–10 are 'core' governmental functions."); *Blackner v. State Dep't of Transp.*, 2002 UT 44, 48 P.3d 949 (holding UDOT and Town of Alta were entitled to immunity based on injury arising from efforts to clear snow from the road); *Peck v. State*, 2008 UT 39, ¶ 8, 191 P.3d 4 (explaining, "there is no dispute that the UHP troopers were undertaking a governmental function" when they pulled over and arrested the plaintiff); *Gillmor v. Salt Lake City*, 89 P. 714, 715 (Utah 1907) (holding "the act of searching the stream for the dead body supposed to be therein . . . for the purpose of tracing crime" was a governmental function); *Lehi City v. Meiling*, 48 P.2d 530, 545 (Utah 1935) (Hansen, C.J., concurring) ("The function which a municipality exercised for the protection of property and persons within its confines—police and fire protection—were perhaps most fundamentally governmental.").

[92] *See* U.C.A. § 63G-7-301.

[93] *See, e.g., Atiya v. Salt Lake County*, 852 P.2d 1007 (Utah Ct. App. 1993) (explaining, "Dr. Atiya has not cited us to, and we have not found, any section of the Governmental Immunity Act that expressly waives governmental immunity under the facts of this case," in which the plaintiff had alleged "the County's intentional acts caused her emotional distress"); *P.J. ex rel. Jensen v. Utah*, No. 2:05-CV-00739, 2006 WL 1702585, at *2 (D. Utah June 16, 2006) (unpublished) ("The UGIA . . . waives immunity only for negligent, not for intentional, torts.").

[94] *P.J. ex rel. Jensen*, 2006 WL 1702585 at *2 ("The limits of this waiver are fatal to the Jensen's two tort causes of action—intentional infliction of emotional distress and wrongful initiation of process—because both are intentional torts.").

[95] *See Amended Complaint*, ECF-36 at ¶ 95.

applies "[e]xcept as otherwise provided in [Chapter 7 of Title 63G]." [96]    Under Section

63G-7-201, a separate statute (chapter and title) cannot waive immunity that is not

waived in the *UGIA*. Notably, the *UGIA* explicitly applies to claims asserted under State

statutes, [97] which includes Plaintiffs' *Seventh Claims for Relief* based upon the *Pattern*

*of Unlawful Activity Act.*

Section 63G-7-101(4) makes clear a "governmental entity and an employee of a

governmental entity retain immunity from suit if an injury arises out of or in connection

with, or results from, conduct or a condition described in Subsection 63G-7-201(3) or

(4)" despite any such waiver.[98] Subsection 63G-7-201(4) includes the very types of

conduct that serve as the basis for Plaintiffs' claim: "the issuance . . . of . . . any permit,

license, certificate, approval, order, or similar authorization," UC.A. § 63G-7-201(4)(c);

"assault, battery,"[99] "false arrest, malicious prosecution," and the institution or

prosecution of any judicial or administrative proceeding, even if malicious or without

probable cause"; [100] "the collection or assessment of taxes"; and "interference with

---

[96] U.C.A. § 63G-7-201(1) ("Except as otherwise provided in this chapter, each governmental entity and each employee of a governmental entity are immune from suit for any injury that results from the exercise of a governmental function.").
[97] U.C.A. § 63G-7-102(2).

[98] U.C.A.§ 63G-7-101(4) (providing in full, "A governmental entity and an employee of a governmental entity retain immunity from suit if an injury arises out of or in connection with, or results from, conduct or a condition described in Subsection 63G-7-201(3) or (4) *even if immunity from suit for the injury is waived under Section 63G-7-301*" (emphasis added)).
[99] *Id.* at §201(4)(b)
[100] *Id.* at -201(4)(b), (e)

contract rights, infliction of mental anguish, or violation of civil rights." [101]   Because one

or more of these immunity-invoking conditions is alleged by Plaintiffs to be a proximate

cause of their injuries, the County is immune from suit.[102]   This is true "regardless of

whether there exist other non-immune causes of the plaintiff's injuries," [103] which means

that Plaintiffs' *Seventh Claim for Relief* should be dismissed with prejudice of this reason

as well.

      **(6)**     **Statutes of Limitations**

Utah has a two-year statute of limitations for claims against political subdivisions

and their employees for the violation of personal rights.[104]   Whereas the arrest of Mr.

David, his criminal prosecution and the seizure of his pistol occurred 2017; and the

claimed wrongs involving the County's taxation of Plaintiffs' property occurred in 2016.

But Plaintiffs did not commence this lawsuit until February 4, 2020. [105]   Hence, insofar as

Plaintiffs' *First, Second, Third, Fifth* and *Seventh Claims for Relief* are grounded on

these events, those claims are time barred and should be dismissed with prejudice.

---

[101] *Id.* at -201(4)(b),(h) .
[102] *See Larsen v. Davis Cty. Sch. Dist.*, 2017 UT App 221, ¶ 24, 409 P.3d 114.
[103] *Id.*
[104] U.C.A. §78B-2-304. Wasatch County asserted the statute of limitations as its *Ninth Affirmative Defense. See Answer to Amended Complaint,* ECF-38 at age 19.
[105] *See Complaint,* ECF-4.

(7)     **Res judicata**

Plaintiffs had a right to appeal the Board of Equalization's 2016 tax rulings to the

State Tax Commission,[106] and if they were dissatisfied with the Tax Commission's

decision, they had a right of appeal to the Third Judicial District Court.[107]  But they

elected not to do so and that is problematic for them because the County asserted res

judicata as its *Tenth Affirmative Defense.*[108]

"[W]hen a state agency acting in a judicial capacity . . . resolves disputed issues

of fact properly before it which the parties have h an adequate opportunity to litigate . . .

federal courts must give the agency's fact-finding the same preclusive effect to which it

would be entitled in the State's courts."[109] The Board of Equalization's decision would be

accorded preclusive effect by Utah Courts.[110]  Because "[i]t is not within the jurisdiction

of federal courts to review administrative decisions of state agencies,' Plaintiffs' cannot

mount a collateral on the Board of Equalization's decision through this lawsuit.[111]

Consequently, to the extent those tax issues are the foundation for Plaintiffs' *Second,*

*Third* and *Seventh Claims for Relief,* those causes of action are barred by the doctrine of

res judicata and should be dismissed with prejudice.

---

[106] *See* U.C.A. §59-2-1004.
[107] *See* U.C.A. §§ 59-1-602 and 59-2-1007(11)(c).
[108] *See Answer to Amended Complaint,* ECF-38 at age 19.
[109] *University of Tennessee v. Elliott,* 478 U.S. 788, 799 (1986).
[110] *See Atiya v. Salt Lake County*, 988 F.2d 1013, 1019-20 (10th Cir. 1993); *Bolling v. Denver*, 790 F.2d 67, 68-69 (10th Cir. 1986).
[111] *See Bush v. Real Estate Comm'n*, 13 F.3d 404, 1993 U.S. App. LEXIS 33484 (10th Cir. 1993)(unpublished); *Chicago, R.I. & P. R. Co. v. Stude*, 346 U.S. 574, 581 (1954).

### (8)   **Punitive Damages**

Under both federal and State law, punitive damages are not recoverable against local governmental entities such as the County.[112]  Plaintiffs' punitive damages claim, therefore, is dismissed with prejudice.

### B.   **PLAINTIFFS HAVE NOT ESTABLISHED A SECOND AMENDMENT VIOLATION (FIRST CLAIM FOR RELIEF).**

Plaintiffs alleged that Wasatch County "confiscated Mr. David's gun in violation of the Second Amendment of the United States *Constitution* and Article 1 Section 6 of the Utah *Constitution*."[113]  Yet, as previously noted, Plaintiffs failed to allege and they did not show that Mr. David's gun was confiscated pursuant to any official Wasatch County policy, practice or custom or that the County was deliberately indifferent in confiscating his gun, which is required to impose any liability upon the County under either §1983 or the Utah *Constitution*.  Plaintiffs have also failed to show, as a matter of law, that Mr. David's right to keep and bear arms was violated.

The Second Amendment confers an individual right to keep and bear arms,[114] but that right is not unlimited.[115]  The Second Amendment is "not a right to keep and carry

---

[112] *See, e.g., Youren v. Tintic Sch. Dist.*, 343 F.3d 1296, 1307 (10th Cir. 2003) and U.C.A. §63G-7-603(1(a).
[113] *See Amended Complaint*, ECF-36, ¶ 57.
[114] Similarly, Article 1 Section 6 of the Utah *Constitution* states, "The individual right of the people to keep and bear arms for security and defense of self, family, others, property, or the state, as well as for other lawful purposes shall not be infringed; but nothing herein shall prevent the Legislature from defining the lawful use of arms."
[115] *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008).

any weapon whatsoever in any manner whatsoever and for whatever purpose."[116]   While
the Tenth Circuit case law is silent on claims alleging the confiscation and retention of a
particular firearm, other jurisdictions have held that "the 'right to bear arms' is not a right
to hold some particular gun."[117]   "Lawful seizure and retention of firearms . . . does not
violate the Second Amendment."[118]   "[E]ven the *unlawful* retention of specific firearms
does not violate the Second Amendment, because the seizure of one firearm does not
prohibit the owner from retaining or acquiring other firearms."[119]

Mr. David's gun was confiscated after he threatened Mr. Mecham with that
weapon, and Mecham called Wasatch County Dispatch to report the incident. The first
officer on the scene, Heber City Police Chief Booth, "removed the gun . . . for safety
purposes."[120] Neither Chief Booth nor Heber City are a party to this case. Mr. David was
arrested, and the gun was held by the Wasatch County Sheriff's Office as evidence.

When the case was dismissed, Mr. David went to the Sheriff's Office, asking for
the return of his gun. He was told that he had to wait thirty days, in which time the
County could appeal the court's decision. The County did not appeal, and Mr. David
received his gun "approximately 30 days later." While his gun was held by the Sheriff's
Office, Mr. David maintained possession of his other firearms and was not prohibited

---

[116] *Id.* at 626.
[117] *Walters v. Wolf*, 660 F.3d 307, 316 (8th Cir. 2011) (quoting *Garcha v. City of Beacon*, 351 F.
Supp. 2d 213, 217 (S.D.N.Y. 2005)).
[118] *Rodgers v. Knight*, 781 F.3d 932, 941–42 (8th Cir. 2015).
[119] *Id.*
[120] WASH000006.

from acquiring additional firearms. For these reasons, Wasatch County did not violate

Mr. David's right to keep and bear arms under either the federal or state *Constitutions*.

Plaintiffs' *First Claim for Relief*, therefore, is dismissed with prejudice.

## C.   PLAINTIFFS HAVE NOT ESTABLISHED A DENIAL OF EQUAL PROTECTION (SECOND CLAIM FOR RELIEF).

Plaintiffs claim that Wasatch County violated their right to equal protection under

the Fourteenth Amendment and Article 1 sections 7 and 24 of the Utah Constitution.

Although they ask the Court to issue "an order that Plaintiffs are entitled to operate their

business at The Hiking Inn without further harassment, criminal prosecution, or illegal

taxation,"[121] it is unclear from the *Amended Complaint* how the County is alleged to have

violated Plaintiffs' equal protection rights.  And when pressed on this issue during his

deposition,  Mr. David identified an email conversation between Deputy County Attorney

McKay King and Mr. David's criminal defense attorney,[122] which Mr. David said was  an

attempt by Mr. King "to skip due process as a part of the initial hearing to skip the waiver

hearing."[123] None of these matters however, even if true, state a claim for violation of

Plaintiffs' equal protection rights.

Generally, to state a claim under section 1983 for violation of the Equal Protection

Clause, a plaintiff must show that he or she is a member of a class of individuals that is

---

[121] *Amended Complaint*, ECF-36 at ¶ 66.
[122] *David Depo*, Ex. 1 at 229 – 30.
[123] *Id.*

being treated differently from similarly situated individuals who are not in that class.[124]

Plaintiffs must demonstrate that the "decisionmaker . . . selected or reaffirmed a

particular course of action at least in part because of, not merely in spite of, the law's

differential treatment of a particular class of persons."[125]  A "discriminatory effect against

a group or class may flow from state action, it may even be a foreseen (or known)

consequence of state action, but it does not run afoul of the Constitution unless it is an

intended consequence of state action."[126]

A plaintiff may raise an equal protection claim under a "class-of-one" theory.[127]

"Class of one doctrine focuses on discrimination not between classes or groups of

persons, as 'traditional' equal protection doctrine does, but on discrimination against a

specific individual."[128]  But "a plaintiff raising a class of one claim must proceed through

essentially the same two steps a plaintiff alleging a class-based claim must. First, the

class-of-one plaintiff must show he or she (as opposed to a class in which he is a

member) was 'intentionally treated from others similarly situated.'"[129]  "Second, when

intentional discrimination is shown to exist the plaintiff must prove there is no 'rational

basis' for it."[130]

---

[124] *See SECSYS, LLC v. Vigil*, 666 F.3d 678, 688 (10th Cir. 2012).
[125] *Id.* at 685.
[126] *Id.*
[127] *See id.* at 688.
[128] *Id.*
[129] *Id.* quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).
[130] *Id.*

Plaintiffs have not only failed to show that they were intentionally treated differently than other B&B owners or defendants in criminal cases in Wasatch County, but they have also not alleged that they were treated differently. And when given the opportunity to identify how Plaintiffs were treated differently, Mr. David could not do so. Instead, the *Amended Complaint* alleges that the County improperly prosecuted Mr. David and that the County incorrectly assessed Plaintiffs' 2016 taxes. Even if Plaintiffs could show that this was differential treatment by the County, there was a rational basis for both acts. The County prosecuted Mr. David for threatening Mr. Mecham with a deadly weapon, and there was obviously a rational basis for that action.

Similarly, in 2016, the County assessor determined that Mr. David was not a resident based on the number of days Mr. David resided at the property and taxed his property accordingly. Mr. David appealed the decision to the Board of Equalization which, after conducting a hearing and considering the evidence presented by the parties, found that the part of Mr. David's the property used to operate the B&B should be considered his residence for tax purposes, and that the increased valuation of the property for tax purposes was correct. The County accepted the Board's evaluation and adjusted the property taxes. Plaintiffs clearly have not been denied equal protection under the law and, therefore, their *Third Claim for Relief* should likewise be dismissed with prejudice.

### D.   PLAINTIFFS HAVE NOT ESTABLISHED A CIVIL CONSPIRACY CLAIM (THIRD CLAIM FOR RELIEF).

Plaintiffs allege that Wasatch County and other unnamed persons "conspired and agreed among themselves to a wrongful, criminal action, to pursue an unfair and unequal taxation to deny land use approvals, and to deprive Plaintiff David of his civil rights and to take Plaintiffs' property without just compensation."[131]  Admittedly, a "'conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law' [is] actionable."[132]  "[T]o prevail on such a claim, 'a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient.'"[133]  "To demonstrate the existence of a conspiratorial agreement it simply must be shown that there was 'a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences.'"[134]

"[T]o recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient.'"[135]  Plaintiffs have proved neither. First, Plaintiffs have failed to establish a violation of their constitutional rights.  Nor have they

---

[131] *Amended Complaint*, ECF-36 at ¶ 68.
[132] *Snell v. Tunnell*, 920 F.2d 673, 701 (10th Cir. 1990) (citation omitted).
[133] *Id.* (citation omitted).
[134] *Id.* (citation omitted).
[135] *Thompson v. Platt*, No. 19-3072, 2020 WL 2394007, at *10 (10th Cir. May 12, 2020) (unpublished) (quoting *Dixon v. City of Lawton*, Okl., 898 F.2d 1443, 1449 (10th Cir. 1990)).

established the existence of a conspiracy designed to violate their civil rights. "An actionable conspiracy requires at least a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective."[136] "[T]to be actionable, the defendants must have actually formed an agreement—even though it need not be express."[137] "[P]roof that defendants engaged in parallel action does not necessarily indicate an agreement to act in concert."[138]

"Furthermore, it is also evident . . . that the agreement must be illegal."[139] "In the § 1983 context, that means the agreement must relate to some deprivation of a federally protected right."[140] Standing alone, proof that defendants formed an agreement or conspired to engage in lawful activities—including lawful investigative activities—will not support a § 1983 conspiracy claim.[141] And, in the instant case, there is no evidence of any agreement—express or implied—involving Mr. Mecham, Midway City or anyone else and the County to deprive Plaintiffs of their constitutional rights, which is fatal to Plaintiffs' civil conspiracy claim.[142] Furthermore, even if Plaintiffs could establish a civil

---

[136] *Thompson*, 2020 WL 2394007, at *10.
[137] *Frasier v. Evans*, 992 F.3d 1003, 1025 (10th Cir. 2021).
[138] *Id.*
[139] *Id.*
[140] *Id.*
[141] *Id.*
[142] *See Montgomery v. City of Ardmore*, 365 F.3d 926, 940 (10th Cir. 2004) ("Mr. Montgomery merely alleged many unlawful acts by various defendants and stated, without any specific facts evincing an agreement among the various defendants, that they conspired against him. The district court appropriately granted summary judgment on the civil conspiracy claim."); *Seay v. Campbell*, 130 F. App'x 268, 273 (10th Cir. 2005) ("We conclude that Seay has failed to

conspiracy claim under either the federal or State *Constitutions,* they have failed to establish a basis for municipal liability because there is no evidence that a municipal policy or custom that was the moving force behind any such constitutional violation. Plaintiffs' *Third Clam for Relief* should accordingly be dismissed with prejudice.

### E.   PLAINTIFFS HAVE NOT ESTABLISHED AN INVERSE CONDEMATION CLAIM (FIFTH CLAIM FOR RELIEF).

The only "taking" involving the County was the seizure of Mr. David's pistol and that did not constitute a taking in violation of either the Fifth and Fourteenth Amendments of the United States *Constitution* and/or Article I Section 22 of the Utah *Constitution.* The United States Supreme Court has long distinguished between "the state's power of eminent domain"—under which "property may not be taken for public use without compensation"—and the state's "police powers"—which are not "burdened with the condition that the state must compensate [affected] individual owners for pecuniary losses they may sustain."[143]   The Tenth Circuit has held that "when the state acts pursuant to the police power, rather than the power of eminent domain, its actions do not constitute a taking for the purposes of the Takings Clause."[144]   Plaintiffs have not

---

establish the existence of the claimed conspiracy between the defendants. At best, he presents a series of events in which the defendants each participated at some point, but no specific facts to show agreement and a concerted action by the defendants.").

[143] *Mugler v. Kansas,* 123 U.S. 623, 668 – 69 (1887); *see also Ostipow v. Federspiel,* 824 Fed. Appx. 336, 341 (6th Cir. 2020) ("[I]t is well settled that a state's seizing and retaining property as part of a criminal investigation is not a 'taking' for a 'public purpose' under the Fifth Amendment, and thus does not give rise to a claim for just compensation.").

[144] *Lech v. Jackson,* 791 F. Appx. 711, 714 (10th Cir. 2019).

alleged that Wasatch County acted to convert Mr. David's gun to a public use.

Furthermore, the gun was clearly confiscated under the police power of the state.

Consequently, Plaintiffs' *Fifth Claim for Relief* fails and should be dismissed with

prejudice.

<strong>F.  PLAINITIFFS HAVE NOT ESTABLISHED A VIOLATION OF UTAH'S PATTERN OF UNLAWFUL ACTIVITY ACT (SEVENTH CLAIM FOR RELIEF).</strong>

By law, claims under the *Pattern of Unlawful Activity Act* "shall be commenced

within three years after the conduct prohibited by Section 76-10-1603 terminates or the

cause of action accrues, whichever is later,"[145] which Plaintiffs did not do. Plaintiffs'

*Pattern of Unlawful Activity* claim is based on the various allegations of unlawful

conduct contained in their *Amended Complaint* all of which occurred well over three

years before they commenced this lawsuit: Mr. David's arrest and the seizure of his pistol

occurred on January 24, 2017; and the alleged improper increase to Plaintiffs' property

taxes occurred in 2016. Yet, Plaintiffs did not assert this claim until the filing of their

*Amended Complaint* on August 10, 2020 even though they had included allegations

regarding those acts in their original *Complaint* filed on February 4, 2020.  Plaintiffs'

*Seventh Claim for Relief*, therefore, is untimely.

The *Pattern of Unlawful Activity Act* "allows a person injured by a pattern of

unlawful activity to bring a civil suit against the parties engaged in the prohibited conduct

---

[145] U.C.A. §76-10-1605(9).

even if no criminal action is pursued."[146]  Under Utah's *Pattern of Unlawful Activity Act*, a "'pattern of unlawful activity' means engaging in conduct which constitutes the commission of at least three episodes of unlawful activity, which episodes are not isolated, but have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics. Taken together, the episodes shall demonstrate continuing unlawful conduct and be related either to each other or to the enterprise."[147] "The proper test for determining whether there was a pattern of unlawful activity is whether there was 'a series of related predicates extending over a substantial period of time' or a demonstrated threat of continuing unlawful activity and not whether there were multiple schemes."[148]

Plaintiffs allege a series of predicates which are listed under the *Act's* definition of "unlawful activity," including threats to influence official or political action; official misconduct; obstruction of justice; acceptance of bribe or bribery to prevent criminal prosecution; written false statements; retaliation against a witness, victim, or informant; and extortion or bribery to dismiss criminal proceedings.[149] But despite alleging these so called unlawful activities, Plaintiffs fail to specify which County official or employee engaged in which unlawful activities which, standing alone, is fatal this *Claim for Relief*

---

[146] *See Hill v. Estate of Allred*, 216 P.3d 929, 937 (Utah 2009) (citing U.C.A. § 76-10-1605(1) (2003)).
[147] *Estate of Allred*, 216 P.3d at 937–38 (quoting U.C.A. § 76-10-1602(2)).
[148] *Id.* at 939 (quoting *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 242 (1989)).
[149] *See Amended Complaint*, ECF-36 at ¶¶ 90–94.

because the *Act* requires that "In all actions under this section the elements of each claim or cause of action shall be stated with particularity against each defendant,"[150] and that Plaintiffs clearly have not done. [151]

Additionally, Plaintiffs have failed to allege or show facts that would establish any of these activities. For example, "official misconduct" requires a showing that a public servant "with an intent to benefit himself or another or to harm another, . . . knowingly commits an unauthorized act which purports to be an act of his office, or knowingly refrains from performing a duty imposed on him by law or clearly inherent in the nature of his office."[152]  Plaintiffs have neither alleged nor have evidence to show that a Wasatch County public servant committed an unauthorized act to benefit themself or harm someone else—including Plaintiffs. Likewise, they have failed to come forward with evidence to prove the other "unlawful activities" they alleged in the *Amended Complaint,* and, without proof of these predicate acts, there can be no pattern of unlawful activity.   Therefore, Plaintiffs' *Seventh Claim for Relief* should likewise be dismissed with prejudice for these additional reasons.

---

[150] U.C.A. §76-101605(7).
[151] *See Amended Complaint*, ECF-36 at ¶¶85-99.
[152] *See* U.C.A. § 76-8-201.

# V.

## PLAINTIFFS' FAILURE TO ADDRESS
## THE COUNTY'S ARGUMENTS

The lack of merit in Plaintiffs' claims is further shown by their response to the County's *Motion for Summary Judgment*. In its *Motion for Summary Judgment*, Wasatch County made the following, among other, arguments:

(1)   That Plaintiffs failed to allege or prove a basis for municipal liability under federal law.[153]

(2)   That Plaintiffs failed to allege or prove a basis for municipal liability under State law.[154]

(3)   That Plaintiffs had failed to prove causation with respect to any alleged civil rights violation.[155]

(4)   That Plaintiffs have failed to show that Mr. David's right to keep and bear arms was violated and/or that the temporary seizure of the pistol as evidence was an unconstitutional taking.[156]

(5)   That Plaintiffs fail to allege or show facts that would establish any of the predicate acts necessary to support a pattern of unlawful activity

---

[153] Wasatch County's *Motion for Summary Judgment*, ECF-54, at page 4.
[154] *Id.* at page 16.
[155] *Id.* at page 17.
[156] *Id.*

claim, including having failed to allege or show that a Wasatch

County public servant had committed a single predicate act.[157]

(6)     That with respect to Wasatch County, the Court lacked subject matter

jurisdiction over Plaintiffs' non-civil rights claims due to their

failure to file a *Notice of Claim* with respect to the County.[158]

(7)     That the County enjoys immunity with respect to *Plaintiffs' Seventh*

*Claim for Relief* under the *Utah Pattern of Unlawful Activity*

*Act,*[159] and that this claim was likewise barred by the three-year

statute of limitations contained in U.C.A. §76-10-1603.[160]

(8)     That Plaintiffs' *Second, Third* and *Seventh Claims for Relief* are

barred, either in whole or part, by the doctrine of res judicata.[161]

(9)     That Plaintiffs' state constitutional claims were barred under the two-

year statute of limitations contained in U.C.A. §78B-2-304.

(10)    That, as a matter of law, Plaintiffs had no claim for punitive

damages.[162]

---

[157] *Motion for Summary Judgment*, ECF-54 at pages 31 through 33.
[158] *Id.* at page 18.
[159] *Id.* at page 19.
[160] *Id.* at page 31.
[161] *Id.* at page 23.
[162] *Id.* at page 5.

Plaintiffs' however, refused to address these arguments in their opposition *Memorandum* and, therefore, have conceded them.[163]

In fact, Plaintiffs ignore and do not even reference in their opposition *Memorandum* most of the arguments advanced by the County in support of its *Motion for Summary Judgment*. Moreover, when Plaintiffs did discuss the County's arguments, they did so in terms of having "stated a claim for relief" or having "alleged" a claim for relief.[164] Then, instead of facts or evidence, Plaintiffs cite to the allegations contained in their *Amended Complaint* to supposedly show that they do have a claim for relief sufficient to survive summary judgment.[165] But, as a matter of law, that is not so.

If this were a *Motion to Dismiss* or a *Motion for Judgment on the Pleadings*, the allegations contained in Plaintiffs' *Amended Complaint* would be relevant because in ruling on a *Rule* 12(b)(6) or *Rule* 12(c) *Motion*, the Court is required to accept as true those allegations along with any reasonable inference that flowed from them.[166] However, the *Motion* before the Court is for summary judgment, which means that Plaintiffs cannot rely upon the allegations contained in their *Amended Complaint*.[167]

---

[163] *See also, U.S. v. Garcia*, 52 F. Supp.2d 1239, 1253 (D. Kan 1999) (Failure to respond to arguments in opposition Memorandum means that non-movant has conceded those matters). *Hinsdale v. City of Liberal Kansas*, 19 Fed. Appx. 749, 7689(10th Cir. 2001) (unpublished) (same).

[164] *See e.g., Opposition Memorandum*, ECF-64, at pages 49, 50, 55 and 58.

[165] *See e.g., id.* at pages 52, 59 and 60.

[166] *See Park University Enterprises, Inc. v. American Cas. Co. Of Reading PA.*, 442 F.3d 1239, 1244 (10th 2006).

[167] *See Baxter v. Railway Exp. Agency, Inc.*, 455 F.2d 693, 696 (6th Cir. 1972).

The County argued, too, that it was entitled to summary judgment because Plaintiffs fail to allege or show facts that would establish any of the predicate acts necessary to support a pattern of unlawful activity, and because they neither alleged nor had evidence to showing that a Wasatch County public servant committed one of these unauthorized acts.  Hence, there was no pattern of unlawful activity.[168]  Plaintiffs' response to the County's arguments on their *Pattern of Unlawful Activity Act* claim consisted of one paragraph containing six sentences in which they quote the *Act* and insist that they have "Stated A Proper RICO Claim."[169]  Accordingly, the Court concludes that Plaintiffs have clearly conceded and/or abandoned their *Pattern of Unlawful Activity Act* claim and the other claims that they failed to defend in the *Memorandum* in opposition to the County's *Motion*.[170]

## VI.

## ORDER

1.   Wasatch County's *Motion for Summary Judgment* is GRANTED (ECF-54) and Plaintiffs' claims against the County are dismissed on the merits with prejudice.

Signed this _14_ day of December, 2021.

BY THE COURT:

Bruce S. Jenkins
United States Senior District Judge

---

[168] *Motion for Summary Judgment*, ECF-54 at pages 31 through 33.
[169] *Opposition Memorandum*, ECF-64 at page 58.
[170] *See Garcia*, 52 F. Supp.2d at 1253; *Hinsdale*, 19 Fed. Appx. At 689 (unpublished).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of December, 2021, I electronically

served the filed the foregoing **MEMORANDUM DECISION AND ORDER** upon the

following parties:

Karra J. Porter
Todd Weiler
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
*Attorneys for Plaintiff Lynn A. David*

Joshua D. Jewkes
Gordon Law Group, P.C.
322 East Gateway Drive, Suite 201
Heber City, Utah 84032
*Attorney for Midway City*

Robert C. Keller
Dani N. Cepernich
Snow Christensen & Martineau
10 Exchange Place, Eleventh Floor
Post Office Box 45000
Salt Lake City, Utah 84145
*Attorneys for Defendants Midway City*
*and Eric K. Mecham*

   /s/ Michael W. Homer